BARCLAY ET AL., PLAINTIFFS AND APPELLANTS, *v.* HEIRS OF MCCORMICK ET AL., DEFENDANTS AND APPELLEES.

APPEAL from the District Court of San Juan in an Action to Annul a Will.

No. 2338.—Decided July 26, 1921.

INTESTATE SUCCESSION—FORCED HEIRS—NATURAL CHILDREN.—In accordance with the laws in force in Porto Rico in the year 1886, in the case of intestate succession natural children were full heirs only in case of lack of heirs of a superior grade, to which a mother surely belonged. The first order was legitimate descendants, or those legitimated by a subsequent marriage or a royal concession. The second order was legitimate ascendants. The third order was collateral up to the fourth grade and thereafter the surviving spouse and then the State. In the absence of legitimate children natural children had a right along with the mother to one-sixth of the estate.

ID.—JUDICIAL NOTICE—FOREIGN LAWS—COMMON LAW.—Judicial notice may be taken that a great part of the laws of England as well as of many States of the United States is unwritten, or what is known as common law, but it can not be taken of what the common law of England is, or, where modified by statute, the present state of the law. In such cases it is necessary to prove the present state of the law of a foreign country by experts.

ID.—CAUSE OF ACTION—PLEADING.—An action brought in Porto Rico by the acknowledged natural children of an English subject who died in 1886 does not state a cause of action if it does not allege that in accordance with the laws of England the plaintiffs were forced heirs; and such an allegation is necessary whether or not there was a will.

ID.—WILL.—A will made in Porto Rico by an English subject before a vice-consul of England on January 27, 1886, is valid in accordance with treaties then in force between Spain and England whereby the latter's consuls could legalize wills.

ID.—ENGLISH SUBJECTS—LAW APPLICABLE.—The rights of acknowledged natural children of English subjects in Porto Rico must be governed by the English law.

The facts are stated in the opinion.

*Mr. L. Muñoz Morales* for the appellants.

*Mr. E. Acuña* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

The appellants in the case before us filed no assignment of errors, but the appellees did on page 5 of their brief and we have verified the assignment as being the same errors separately set out in the brief of the appellants.

Appellants maintain that the court erred, first, in holding that the appellants were not forced heirs under the law of Spain; second, in holding that the appellants, as natural children, were not the heirs of the father under English law; third, in holding that the will made by David Barclay McFarland before the English Consul in Guayama was valid.

We are to consider only the complaint, as the court below sustained a demurrer thereto and rendered judgment in favor of the defendants.

According to the complaint, David Barclay McFarland was an English subject and along in 1883 formed a partnership with Adela Hartman, the partnership being known as A. Hartman & Co., and it is the partnership property and the transfer thereof that is involved in this action. It appears from the complaint that McFarland acknowledged David Barclay and Elena Barclay as his natural children.

On the 27th of January, 1886, David Barclay McFarland appeared before the English Vice-consul, Juan Carlos McCormick, and executed an instrument which, as recited in the complaint, he said was his last will wherein he said he was a bachelor, and he bequeathed all his property of whatsoever description to his mother, Helen M., widow of Barclay, who resided in Scotland, and he omitted mention of his two natural children, the appellants here.

David Barclay McFarland died in 1886 without other descendants and the heiress, **Elena McFarland, widow of** Barclay, named her brother John McFarland as her attorney in fact, and the latter sold all the rights and actions of David

Barclay in the firm of A. Hartman & Co. to Juan Carlos McCormick and William McCormick for $1,500. The rest of the complaint, besides setting up certain frauds and alleging preterition, has to do with transfers and deaths and inheritances in order to determine who were the necessary parties defendant to the suit. The essential questions have been stated in the resumé of errors. We are concerned only with personal property and hence no matter of *lex rei sitae* can arise.

The appellees maintain, in answer to the first error alleged, that at the date of the death of David Barclay McFarland, or on January 27, 1886, natural children could not be forced heirs, inasmuch as the testator had a mother living. We agree with the appellees that the citation of laws made by the appellants only shows that at that date natural children had some rights, but not that they were forced heirs. Escriche, vol. 3, page 864; Escriche, vol. 3, page 20, 21; Escriche, vol. 3, page 60; Febrero Reformado, vol. 1, page 369.

The court below said:

"Their acknowledgment took place in the years 1884 and 1885 when the Spanish Civil Code was not in force, they being considered as Spanish subjects; and according to the Spanish legislation applicable, acknowledged natural children had not the character of forced heirs in conjunction with legitimate descendants or ascendants; they only had a right to support; and should we have to consider the intestate succession, they could neither inherit, there being ascendants."

As we understand the laws in force at that date, even in the case of intestate succession natural children were only full heirs in case of a lack of heirs of a superior grade, to which a mother surely belonged. The first order was legitimate descendants, or those legitimated by a subsequent marriage or a royal concession. The second order was legitimate ascendants. The third order was collateral up to the fourth grade and thereafter the surviving spouse and then

the State. In the absence of legitimate children, natural children had a right along with the mother to one-sixth of the estate. The appellants, in any case, would have, not a right to insist on a total annulment of the will, but only *pro tanto*. However, if there was a valid will, these natural children were not heirs.

The complaint is silent on what is the law of England in regard to the rights of natural children there. We shall discuss the point a little later, but assuming that we can not take judicial notice of the laws of England, then it would have been necessary for the appellants, if they were claiming by reason of English law, to have so stated, or to have expressed their rights thereunder in the complaint. It is evident that the complainants were not relying on their rights as British subjects. Under this assumption the appellants could only recover by alleging and proving that in England there could be no preterition of acknowledged natural children. Indeed, the assumption or presumption, if we can not take judicial notice of foreign laws, would be that such laws were the same as our own and hence that there might in 1886 have been a preterition of acknowledged natural children in England.

Appellees ask us practically to take judicial notice that by the laws of England acknowledged natural children have no rights of inheritance. Under the Law of Evidence, section 53, perhaps we can take judicial notice of the statutory laws of another country, but here we do not know whether the laws in regard to the inheritance of acknowledged natural children are written or unwritten. We can take judicial notice that a great part of the law of England, as well as of many States of the United States, is unwritten, or what is known as common law. We can not take judicial notice of what the common law of England is, or, where modified by statute, the present state of the law. 23 C. J. 131. In such cases it is necessary to prove the present state of the

law of a foreign country by experts. The complaint is silent on the subject of the state of the English law and we can not judicially declare what in England are the present rights of inheritance of natural children. Nevertheless, inasmuch as David Barclay McFarland was a British subject, the complaint does not state a cause of action, in that it does not set forth as a fact that these natural children would, under English laws, be entitled to a part of the inheritance. And we hold that an averment of this kind would be necessary, whether Barclay made a valid will or not.

While we are on this subject, and although it may be *obiter dicta,* yet 7 Corpus Juris, 958 *et seq.,* tends to show that in England at common law natural acknowledged children had no claim on the estate of their putative father. In some states 'a natural child may be legitimated, but this· is rather the exception than the rule. 7 C. J. 948. Such a child was *filius nullius.* So that unless there has been some change by statute to which we have not. been referred by appellants, their right to inherit, being British subjects, does not exist.

The appellants also maintain that the will was not valid because executed before a vice-consul. They may be right in maintaining that authority to act as a notary must be given by treaty and that there is a treaty between Great Britain and Spain giving consuls such right 'dated April 26, 1886, or three months after.the will in this case. Perhaps we may take judicial notice that in England a will does not need to be executed before a notary, but, subject to correction, we are convinced by appellees that there were previous treaties between Great Britain and Spain giving consuls the power to act as notaries and that this is a matter of private international law of which we can take notice, and we are also convinced that a vice-consul has the same power.

A little more that may be an *obiter dictum.* It would appear that in England a will does not need to be executed

before a notary, and this fact was brought to our attention and commented upon in *Casiano* v. *Luchetti,* 24 P. R. R. 111.

We are especially of the opinion that David Barclay being a British subject, the rights of the acknowledged natural children must be governed by English law.

We have recurred to possible *obiter dicta* in this case because even if we can not take judicial notice of the state of English law, yet these acknowledged natural children should not be put to further trouble when the matters of which we could, perhaps, not notice judicially are capable of such ready proof.

The judgment must be

*Affirmed.*

Chief Justice Hernández and Justices Del Toro, Aldrey and Hutchison concurred.